IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

In re: BRIAN PAUL TAYLOR, Debtor     Case No. 3:21-bk-71360
    Chapter 7

J. BRIAN FERGUSON, Chapter 7 Trustee     PLAINTIFF

v.     3:21-ap-07037

STACEY MARIE TAYLOR     DEFENDANT

### ORDER AND OPINION GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

Brian Paul Taylor [debtor] filed his chapter 7 voluntary petition on September 23, 2021. The same day, J. Brian Ferguson [trustee] was appointed as the chapter 7 trustee of the debtor's bankruptcy estate. On December 23, 2021, the trustee filed this adversary proceeding against the debtor's ex-wife, Stacey Taylor [defendant or Ms. Taylor]. In his complaint, the trustee alleges that the debtor fraudulently transferred three parcels of real property to Ms. Taylor and seeks to avoid the transfers pursuant to 11 U.S.C. § 548(a)(1). The trustee contends that the transfers constitute both actual fraud under 11 U.S.C. § 548(a)(1)(A) and constructive fraud under § 548(a)(1)(B). To the extent the Court finds that the transfers were fraudulent under either or both subsections of § 548(a)(1), the trustee requests turnover of the subject properties for the benefit of the debtor's estate pursuant to 11 U.S.C. § 542 and § 550. On February 21, 2022, the trustee filed a motion for summary judgment as to his cause of action under § 548(a)(1)(A), a brief in support, and a statement of undisputed material facts. On March 21, 2022, Ms. Taylor filed her response and an incorporated brief that included her response to the trustee's statement of undisputed facts. On June 14, 2022, the trustee filed his reply to Ms. Taylor's response. For the reasons stated below, the Court grants the trustee's motion for summary judgment and finds as a matter of law that the debtor's transfers of the three parcels to Ms. Taylor constitute avoidable fraudulent transfers under § 548(a)(1)(A).

**Summary Judgment**

Federal Rule of Bankruptcy Procedure 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Rule 56 states that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Canal Ins. Co. v. ML & S Trucking, Inc.*, No. 2:10-CV-02041, 2011 WL 2666824, at *1 (W.D. Ark. July 6, 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing to former Fed. R. Civ. P. 56(c)). The burden then shifts to the non-moving party, who must show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The non-moving party is not required to present a defense to an insufficient presentation of facts by the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (quoting 6 J. Moore, Fed. Prac. 56.22(2), pp. 2824-25 (2d ed. 1966)). However, if the non-moving party fails to address the movant's assertion of fact, the court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2). When ruling on a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and allow that party the benefit of all reasonable inferences to be drawn from the evidence. *Canada v. Union Electric Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997); *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650 (8th Cir. 1996).

**Facts**

The debtor and Ms. Taylor married in 2001. During the parties' marriage, the debtor operated a gold refinery and a timber business. Until 2015, the debtor obtained loans for the gold refinery under the name of an LLC of which he was the sole member. (Stacey Taylor's Rule 2004 Exam. Tr. [Tr.] 12-13, Nov. 30, 2021.)[1] By 2015, however, the

---

[1] The trustee introduced a transcript of Ms. Taylor's Rule 2004 examination as Exhibit 3 to his statement of undisputed material facts, which appears at docket entry 9 in this

debtor's gold refinery had incurred debt that the debtor did not want to pay, leading him to ask Ms. Taylor to create a new LLC of which she would be the sole member and under which the debtor would continue to run his existing gold refinery. She did as he asked and created Mid-South Assay & Diamonds, LLC. (Tr. 11-13.) Ms. Taylor understood from the debtor that the purpose of creating the new LLC was so the debtor could avoid paying the loans incurred by his LLC while taking out additional loans for his gold refinery in the name of the new LLC. (Tr. 12-13.)

In 2017, the debtor instructed Ms. Taylor to create a second LLC, again with her as the sole member, because he wanted to start a logging business. At the debtor's behest, she created Golden Timber, LLC, and financed the logging equipment the debtor needed through this second LLC. (Tr. 18-20.)

Additionally, in accordance with the debtor's expressed wishes, all bank accounts that he used and maintained control over—both business and personal—were held in only Ms. Taylor's name because the debtor "didn't want to show income, because he didn't want creditors to be able to see income." (Tr. 50-52.) Although his name was not on the accounts, the debtor had access to the funds in Ms. Taylor's accounts and frequently signed her name to checks drawn on those accounts. (Tr. 50-53.)

On December 16, 2020, the debtor filed a complaint for divorce from Ms. Taylor in Baxter County Circuit Court [state court]. Although the debtor was represented by an attorney during the divorce proceedings, Ms. Taylor chose not to retain counsel because she believed she would not get "a penny more than [the debtor] wanted to give [her] anyway" and she wished to "stay on his good side." (Tr. 25.) On January 12, 2021, the debtor and Ms. Taylor executed and filed with the state court a *Child Custody Separation and Property Settlement Agreement* upon which the parties had agreed [original agreement]. (Pl.'s Ex. 4.) Ms. Taylor signed the original agreement voluntarily and

---

adversary proceeding. However, to enable more precise citations to this part of the record, the Court will cite to the transcript itself rather than the exhibit number.

3

under no pressure from the debtor. (Tr. 70.) On January 21, 2021, the state court entered a divorce decree that incorporated the original agreement. (Pl.'s Ex. 5.) Contrary to how the parties had maintained the aforementioned assets during their marriage, the original agreement provided, in relevant part, that all of the parties' real property and any corresponding debt would be vested in the debtor.[2] The original agreement contained the following provision:

> WHEREAS, it is the desire and intention of the parties that their relations with respect to the property and financial matters be finally fixed by this agreement in order to determine in all respects and for all purposes their respective present and future property rights, claims, and demands in such a manner that any action with respect to the rights and obligations, past present, or future, of either party with respect to the other, be finally and conclusively settled and determined by this agreement.

(Pl.'s Ex. 4.) Despite this provision, the debtor verbally promised to Ms. Taylor in conjunction with the original agreement that "if [she] got [her] mother to go buy [her] a house in Mountain Home, that he would pay [her] mortgage up to $80,000." (Tr. 25.) The debtor told Ms. Taylor that "he could not put that in writing in the divorce decree because—that a judge wouldn't sign off on it because he doesn't show any income." (Tr. 70.)

Around the date that the parties' divorce was finalized on January 21, 2021, Ms. Taylor was scheduled to interview for a job. Initially, she did not tell the debtor that she was getting a job because she "knew that he was not going to handle that well." (Tr. 26.) The debtor learned of Ms. Taylor's employment opportunity on the same morning that she was supposed to interview for the position. In response to finding out about her interview, the debtor told Ms. Taylor that "he never planned on giving [her] any of the money that he told [her] he was going to give [her]." (Tr. 26.) Ms. Taylor cancelled the interview as a result. In late January 2021—the same month the parties' divorce had become final—they reconciled.

---

[2] The parties' real property—and the subject of the trustee's avoidance action—consisted of three contiguous parcels: the "house" parcel upon which the parties' marital residence was situated; the "boat house" parcel; and the "vacant lots" parcel. (Tr. 27.) The mortgages associated with these parcels were held in Ms. Taylor's name. (Tr. 25.)

4

Two months later, in March 2021, the debtor met with a bankruptcy attorney to discuss filing a bankruptcy case. The attorney advised the debtor that putting the properties in his name under his original agreement with Ms. Taylor had been a mistake because the properties could be taken by the trustee to pay his creditors. After his bankruptcy consultation, the debtor told Ms. Taylor that he "needed to put it all back in [her] name" in order to keep the property out of his bankruptcy. (Tr. 27-28.) To that end, on April 29, 2021, the debtor filed a *Petition to Modify Property Settlement Agreement* in state court [petition]. (Pl.'s Ex. 6.) Attached to the petition was a modified agreed order [modified agreement] signed by the debtor, the debtor's divorce attorney, and Ms. Taylor. The modified agreement provided that Ms. Taylor would continue to reside in and own the properties and the debtor would transfer his interest in the properties to her by quitclaim deed. The same date the debtor filed the petition in state court, the debtor and Ms. Taylor executed and caused to be recorded three quitclaim deeds through which the debtor transferred his interest in the three parcels of property to Ms. Taylor. (Pl.'s Ex. 7.) The state court entered an order approving the parties' modified agreement on April 30, 2021.

The trustee conducted Ms. Taylor's Rule 2004 exam on November 30, 2021.[3] During her 2004 exam, Ms. Taylor initially testified that the debtor did not receive anything under the modified agreement in exchange for transferring her the "valuable" properties. (Tr. 72.) Later, however, she testified in response to her own attorney's questions that, in exchange for the properties, she gave up her right to collect on the debtor's verbal promise to pay $80,000 toward Ms. Taylor's future mortgage. (Tr. 72-73.) Ms. Taylor maintained in both her answer to the trustee's complaint and in her response to the trustee's motion for summary judgment that, in exchange for the properties, she released the debtor from his promise to pay $80,000 toward her future mortgage. (Def.'s Ans. ¶ 20; Def.'s Resp. ¶ 2.)

---

[3] In this order, all references to Ms. Taylor's testimony are references to the testimony she gave under oath at her Rule 2004 exam.

As to the debtor's insolvency at the time of the transfers, Ms. Taylor testified on November 30, 2021, that the debtor had been insolvent for at least fifteen years and "definitely" since 2015. (Tr. 70-71.) However, in her answer to the trustee's complaint, Ms. Taylor averred that she was without the knowledge to admit or deny that the debtor was insolvent on the date of the transfers because the debtor "has handled money and done business in the names of his friends and family for an extended period of time, and as [sic] always been able to come up with funding when he has wanted." (Def.'s Ans. ¶ 18.) In her response to the trustee's motion for summary judgment, she denied that the debtor had been insolvent during any time relevant to this adversary proceeding. (Def.'s Resp. 4 ¶ 11.)

Ms. Taylor testified that the debtor transferred the property to her "solely to protect it through [his] bankruptcy." (Tr. 40-41.) In her answer to the trustee's complaint, Ms. Taylor admitted that she testified at her 2004 exam that the debtor agreed to the modified agreement and conveyed the properties to her because he did not want to lose them in bankruptcy. (Def.'s Ans. ¶ 23.) Similarly, Ms. Taylor admitted in her response to the trustee's motion for summary judgment that "the property was transferred with the intent to prevent some of [the debtor's] creditors from receiving it." (Def.'s Resp. ¶ 2.) According to Ms. Taylor, the debtor intended for her to hold the properties in her name for a period of time and return them to him at some point in the future—in keeping with his long-standing predilection for establishing his businesses and placing his assets in the names of others while retaining control. For her part, Ms. Taylor viewed the modified agreement as a chance to assuage her regrets over giving the debtor everything he wanted in the parties' original agreement. (Tr. 28-29.)

The debtor and Ms. Taylor's post-divorce reconciliation came to an end on August 13, 2021, at which time Ms. Taylor disclosed to the debtor that she had never intended to return the properties to him. (Tr. 75-76.) The debtor filed bankruptcy the following month, on September 23, 2021. The trustee filed this adversary proceeding against Ms.

6

Taylor on December 23, 2021, alleging that the debtor's transfers to Ms. Taylor were fraudulent and therefore avoidable under § 548(a)(1)(A) and (a)(1)(B).[4]

### Law & Analysis

The trustee has moved for summary judgment only as to his cause of action under § 548(a)(1)(A), which provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition if the debtor voluntarily or involuntarily—
> (A) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date such transfer was made, . . . indebted.

11 U.S.C. § 548(a)(1)(A). To successfully avoid the debtor's transfers to Ms. Taylor under § 548(a)(1)(A), the trustee must demonstrate by a preponderance of the evidence that: "(1) the debtor had an interest in property, (2) the debtor voluntarily or involuntarily transferred that interest, (3) the transfer occurred on or within two years before [the] debtor filed for bankruptcy relief, (4) the debtor made the transfer with actual intent to hinder, delay or defraud any creditor of the debtor on or after the date of the transfer." *Doeling v. O'Neill* (*In re O'Neill*), 550 B.R. 482, 496-97 (Bankr. D. N.D. 2016) (citations omitted). Viewing the evidence in the light most favorable to Ms. Taylor, the Court finds that all four elements are present: the debtor had an interest in the three parcels of property that he voluntarily transferred to Ms. Taylor on April 29, 2021 (which was less than five months before the debtor filed his bankruptcy case on September 23, 2021), and he did so with the actual intent to hinder, delay, or defraud his creditors.

"Fraudulent transfer law focuses on the intent of the debtor. If the debtor transfers [his] assets with the intent to defraud [his] creditors, the transfer can be avoided as fraudulent."

---

[4] After filing this adversary proceeding, the trustee filed a motion in state court seeking to be substituted as the real party in interest regarding the debtor's property interests and asking the state court to vacate its April 30, 2021 order approving the modified agreement. The state court granted the trustee's motion and substituted the trustee as the real party in interest, vacated its April 30, 2021 order, and ordered that the original agreement dated January 12, 2021, was the still operative. (Pl.'s Ex. 8.)

7

*Ritchie Capital Mgmt., LLC v. Stoebner*, 779 F.3d 857, 862 (8th Cir. 2015) (citing 11 U.S.C. § 548(a)(1)(A)). A transfer is fraudulent if "the debtor intends to put the property and its proceeds beyond the reach of his creditors . . . ." *In re Duncan & Forbes Dev., Inc.*, 368 B.R. 27, 35 (Bankr. C.D. Cal. 2006) (quoting *Van Iderstine v. Nat'l Disc. Co.*, 227 U.S. 575, 582, (1913)).

Generally, it is difficult for a court to find that a debtor possessed the actual intent to defraud his creditors without resorting to an analysis of the "badges of fraud." *See id*. ("[b]ecause intent to defraud is not commonly admitted, courts frequently must rely on circumstantial evidence of intent to defraud."). However, this Court is faced with no such difficulty. Here, there is direct evidence that the debtor transferred the properties in question with the actual intent to hinder, delay, or defraud his creditors. After the debtor consulted a bankruptcy attorney and discovered that his properties would be at risk in a bankruptcy, the debtor told Ms. Taylor that he needed to put the properties in her name to protect them during his bankruptcy case—and then he did just that. The Court recognizes that summary judgment as to intent must be granted "with caution." *United States v. One 1989 Jeep Wagoneer*, 976 F.2d 1172, 1176 (8th Cir. 1992). However, here, there are no other plausible explanations for the debtor's transfers (including those proposed by Ms. Taylor in her defenses, discussed *infra*); there are no contrary or additional facts asserted in the record that make Ms. Taylor's clear, sworn statements as to the debtor's intent ones from which multiple inferences could be drawn; and, the Court has *direct* evidence as to the debtor's requisite intent that is uncontroverted by Ms. Taylor as the non-moving party. As a result, the Court finds that the trustee is entitled to summary judgment under § 548(a)(1)(A).

Such finding is not precluded by any of the defenses that Ms. Taylor has asserted. In opposition to the trustee's motion for summary judgment, Ms. Taylor argues that in her answer to the trustee's complaint, she "pled equitable defenses which raise material questions of fact which have to be resolved before this case can be decided." (Def.'s Resp. ¶ 1.) Specifically, Ms. Taylor contends that summary judgment is not proper because:

- "She was promised $80,000 to sign off on the [original] Property Settlement and that promise was traded for the property she received" under the modified agreement. (Def.'s Resp. ¶ 1.)

- "This is not a case where the property was transferred for less than its value as in most such cases." (Def.'s Resp. ¶ 2.)

- The debtor made "verbal inducements to get [her] to sign off on a property settlement agreement which, on its face, is blatantly unfair to [her]." (Def.'s Resp. ¶ 2.)

- She did not consult with an attorney before signing the original agreement. (Def.'s Resp. ¶ 6.)

- The debtor's intentions, "while relevant, were not known or understood by [her] at the time of the transfer, and she maintains that she still gave good value for the transfer and did so in good faith." (Def.'s Resp. 3 ¶ 2.)

- She "does not believe [the debtor] is insolvent currently, or at any time relevant to these proceedings, as his standard of living would reflect that [the debtor] continues to have access to funds for things he wants to do and is able to buy a new car for the parties' daughter to drive. It is the [d]efendant's good faith belief that [the debtor] is continuing years of his habit of placing assets in the legal names of others and running businesses under the names of others while retaining beneficial ownership as well as actual control." (Def.'s Resp. 4 ¶ 11.)

- She is entitled to employ § 548(c) as a defense to the trustee's avoidance of the subject transfers because she was either unaware that the debtor was insolvent at the time of the transfers, or the debtor was not really insolvent. (Def.'s Resp. 4-5.)

A primary function of summary judgment "is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp.*, 477 U.S. at 323-24. With that purpose in mind, the Court will address Ms. Taylor's asserted defenses, starting with her alleged entitlement to the defense provided in § 548(c).

Under § 548(c), a transferee may retain fraudulently transferred property to the extent the transferee—here, Ms. Taylor—took the property (1) in good faith and (2) gave the debtor value in exchange for the property. 11 U.S.C. § 548(c). "The Bankruptcy Code does not define good faith. Good faith is not susceptible of precise definition and is determined on a case-by-case basis." *Brown v. Third Nat'l Bank* (*In re Sherman*), 67 F.3d 1348, 1355

9

(8th Cir. 1995).  The parties focused their good faith arguments on whether Ms. Taylor was aware of the debtor's possible insolvency at the time of the transfers.  *See id.* ("a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.")  However, in this case, the Court finds that its analysis of good faith begins and ends with whether Ms. Taylor "actually was aware or should have been aware, at the time of the transfers . . . that the transferor-debtor intended to 'hinder, delay, or defraud any entity to which the debtor was or became . . . indebted.'"  *Gold v. First Tenn. Bank Nat'l Ass'n* (*In re Taneja*), 743 F.3d 423, 430 (11th Cir. 2014) (citations omitted).  The Court finds for the reasons stated below that Ms. Taylor was aware at the time of the transfers that the debtor intended to defraud hinder, delay, or defraud his creditors.

Ms. Taylor admitted in her response to the trustee's motion for summary judgment that "the property was transferred with the intent to prevent some of [the debtor's] creditors from receiving it." (Def.'s Resp. ¶ 2.)  Despite this admission, she asserted in a different section of the same document that the debtor's intentions "were not known or understood by [her] at the time of the transfers." (Def.'s Resp. 3 ¶ 2.)  The Court finds this assertion unsupported by the record and implausible.  Ms. Taylor testified without equivocation that, after the debtor consulted with a bankruptcy attorney and realized that he could lose the subject properties in a bankruptcy, *he told her* that he needed to put the properties in her name to protect them during his bankruptcy.  Further, even if Ms. Taylor was somehow not aware of the debtor's intent—despite hearing his words stating his intent—she undoubtedly should have been.  Ms. Taylor testified to the debtor's penchant for attempting to elude his creditors by placing his assets, bank accounts, and income in her name.  In fact, Ms. Taylor testified to a long history of being complicit in the debtor's efforts to conceal his income and assets from his creditors—she held personal and business bank accounts in her name and set up two LLCs at the debtor's request, at least one of which she created with the knowledge that the LLC's purpose was to allow the debtor to continue his gold refining business while leaving existing creditors unpaid and giving the debtor the ability to use Ms. Taylor to take out new loans under the name of an LLC with which he was not associated, at least on paper.  Ms. Taylor's characterization

of these actions, which were aimed at placing property beyond the reach of the debtor's creditors, as part of the debtor's continuing "habit," does nothing to support Ms. Taylor's claim of good faith. (*See* Def.'s Resp. 4 ¶ 11.) To the contrary, it demonstrates the number of opportunities Ms. Taylor had to become aware of the debtor's intent. As a result, the Court finds that Ms. Taylor knew and should have known that the debtor intended to hinder, delay, or defraud his creditors at the time he transferred the properties to her. Further, although the Court finds that Ms. Taylor's knowledge of the debtor's intent to defraud his creditors precludes a finding of good faith under § 548(c), there is also no question that Ms. Taylor had sufficient facts before her at the time of the transfers to put her on inquiry notice of the debtor's *possible* insolvency. *See Meeks v. Red River Entm't* (*In re Armstrong*), 285 F.3d 1092,1096 (8th Cir. 2002). The debtor told Ms. Taylor that he needed to transfer the properties to her to prevent losing them in his bankruptcy case and, while a debtor need not be insolvent to file bankruptcy, his reference to an impending bankruptcy filing was enough to place her on notice that he was possibly insolvent.[5] For these reasons, the Court finds that Ms. Taylor did not take the property in good faith.

In addition, the Court finds that Ms. Taylor gave no value to the debtor in exchange for the properties. She argues in opposition to summary judgment that she "was promised $80,000 to sign off on the [original] Property Settlement and that promise was traded for the property she received" under the modified agreement. (Def.'s Resp. ¶ 1.) Based on the record currently before the Court, there is no reason to disbelieve that the debtor verbally promised Ms. Taylor $80,000 in future mortgage payments at the time of the original agreement. However, Ms. Taylor also testified that the debtor retracted that promise in January 2021, when he found out about her job interview. Specifically, Ms.

---

[5] The Court need not analyze whether the debtor was *actually* insolvent on the date of the transfers because proving actual insolvency is not necessary for the trustee to prevail under § 548(a)(1)(A). *See In re O'Neill*, 550 B.R. at 496-97 (listing the elements of actual fraud under § 548(a)(1)(A)). Further, whether the debtor was actually insolvent on the date of the transfers is irrelevant to the Court's finding that Ms. Taylor lacked the good faith required for a defense under § 548(c).

Taylor testified that the debtor told her at that time that "he never planned on giving [her] any of the money that he told [her] he was going to give [her]." (Tr. 26.) Accordingly, Ms. Taylor could not have forgiven the debtor's promise in exchange for the properties on April 29, 2021—the promise no longer existed by that date.[6] For these reasons, the Court finds that Ms. Taylor is not entitled to a defense under § 548(c).

Ms. Taylor's remaining affirmative defenses relate to the circumstances under which she signed the original agreement; namely, that the debtor offered "verbal inducements" to get her to sign the original agreement, which contained written terms that were "blatantly unfair" to her, and that she signed the agreement without consulting any attorney. The Court need not analyze whether these assertions are factually supported in the record—even if they are, this Court is without the power to modify the state court's order approving the agreement. *See Portwood v. Young* (*In re Portwood*), 308 B.R. 351, 355 (8th Cir. 2004) (the *Rooker-Feldman* doctrine prohibits lower federal courts from reviewing, undermining, or modifying state court orders). As a result, the Court finds that none of the defenses asserted by Ms. Taylor in response to the trustee's motion for summary judgment preclude judgment in the trustee's favor under § 548(a)(1)(A).

---

[6] Even had the debtor's promise remained intact on the date of the transfers, Ms. Taylor's release of that promise was of no value to the debtor for purposes of § 548(c) because his promise to Ms. Taylor had affixed no actual liability upon him. While the Court will not needlessly lengthen this opinion by engaging in a full-blown contractual analysis under Arkansas law, the Court notes that Ms. Taylor's enforcement of the debtor's promise would have been difficult—if not impossible—for at least two reasons. First, the debtor's promise did not appear in the parties' original written agreement—an agreement which provided in unambiguous terms that it was intended by the parties to determine with finality all property rights between them. Under such circumstances, the parol evidence rule precludes the introduction of evidence to prove that there was an additional but unwritten term in an agreement. *See Parker v. Parker*, 591 S.W.3d 818, 823 (Ark. Ct. App. 2019) ("When a contract is plain, unambiguous, and complete in its terms, parol evidence is not admissible to contradict *or add to* the written terms.") Second, the debtor's promise was too vague to be enforced: he did not promise to pay $80,000 in mortgage payments for Ms. Taylor—he promised to pay *up to* $80,000 in mortgage payments *if* Ms. Taylor could convince her mother to buy her a home in a specific location. (*See* Tr. 25) To be enforceable, "[t]he terms of a contract must be reasonably certain." *See ERC Mortgage Group, Inc. v. Luper*, 795 S.W.2d 362 (Ark. Ct. App. 1990).

12

**Conclusion**

For all of the above stated reasons, the Court grants the trustee's motion for summary judgment under § 548(a)(1)(A) and orders turnover of the properties pursuant to § 542 and § 550 upon the following condition. While neither party raised the issue, the Court takes judicial notice of the fact that Ms. Taylor filed her own chapter 7 voluntary petition on March 3, 2022 [Case No. 3:22-bk-70212], which resulted in the imposition of the automatic stay under 11 U.S.C. § 362(a). Therefore, turnover of the properties is conditioned upon the trustee filing the appropriate motion for relief from stay in Case No. 3:22-bk-70212.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 08/15/2022

cc: J. Brian Ferguson
James R. Baxter
Ricky E. Watson
Stanley V. Bond
United States Trustee